IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SMART TEAM GLOBAL, LLC<br><br>          Plaintiff,<br>v.<br><br>HUMBLE TECH LLC and LIN LI,<br>          Defendants. | Civil Action No.<br><br>**COMPLAINT** |

1.  Plaintiff Smart Team Global, LLC (collectively, "Plaintiff" or STG"), asserts claims against defendants Humble Tech LLC ("HumbleTech") and Lin Li ("Li") (collectively, "Defendants"), for unfair competition, breach of the common law duty of loyalty, tortious interference with prospective economic advantage, violation of the Virginia Uniform Trade Secrets Act, common law misappropriation of confidential information and trade secrets, misappropriation of trade secrets under 18 U.S.C. § 1836, *et seq.*, unjust enrichment, and for forfeiture of salary and benefits.

2.  Specifically, STG seeks to recover damages arising out of Defendants' theft of Plaintiff's ideas, business plans, technology, customer contacts, and other non-public information belonging to Plaintiffs in developing Defendants' HumbleTech business. Upon information and belief, defendant Li conceived of the idea to steal Plaintiffs' business during his employment with STG.

3.  Since Li's abrupt departure from STG in March 2018, he has been systematically steering STG's business and its clients to his HumbleTech venture, utilizing the proprietary information he acquired by virtue of his employment with STG.

## JURISDICTION

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2), as this is a civil action between citizens of the State of Virginia and citizens or subjects of a foreign state who are not lawfully admitted for permanent residence in the United States, and/or who are not domiciled in the State of Virginia; and the amount in controversy (including the value of the equitable relief sought herein) well exceeds $75,000, exclusive of attorneys' fees, costs, and interest.

5. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as STG asserts claims against Defendants under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

6. This Court has personal jurisdiction over Defendants because HumbleTech is a limited liability company formed under the laws of the State of New York; Defendants regularly transact business activities in this judicial district; there is the requisite nexus between these business activities and this action; and Defendant engaged in substantial and not isolated activity within this judicial district.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events which gave rise to the Complaint occurred in this judicial district.

## THE PARTIES

8. Plaintiff STG is a Virginia limited liability company whose sole members are Yuancheng Wang and Wei Xu, both of whom are natural persons and citizens of the State of Virginia.

9.      Defendant HumbleTech is a limited liability company formed under the laws of the State of New York.  Upon information and belief, HumbleTech's sole member is defendant Li, a natural person and a citizen of the People's Republic of China (the "PRC").

## **FACTS**

**A.     Background on STG**

10.     STG is a software consulting firm that specializes in advanced enterprise solutions for clients worldwide, focusing on information governance and a sophisticated content publishing platform.

11.     STG works with its customers in leveraging advanced technologies to assist them in carrying out their businesses.  The products and services STG provides to its customers include:

   a.     "Matteroom KM(BPM)," a platform that allows lawyers to search documents from the firm's Knowledge Management library powered by iManage Work DM;

   b.     "Matteroom Practice Management," Legal Practice Management software for law firms that including functionality for matter intake, timesheet entries, and expense and bill tracking, and that works directly with iManage Work DM;

   c.     "Matteroom Conflict Search," a conflict search system for law firms;

   d.     "JudgeBee Stack," a private cloud-based system which links various information governance software used by legal professionals, including Microsoft Office, iManage, and Workshare;

   e.     "Konquis," a comprehensive classification system for English & Chinese language content, with accurate, comprehensive, and detailed metadata; and

f. "STG Discovery," which provides industry-leading proactive compliance solutions to Fortune 500 enterprises and litigation support services.

12. In addition, STG offers "STG Consulting," a software consulting service that specializes in system integration across various information governance technologies. These include STG's Matteroom software (which includes Matteroom KM(BPM), Matteroom Practice Management and Matteroom Conflict Search), as well as software and services provided by various other business partners, including:

a. "iManage," a work management system targeted at legal, accounting, and financial firms;

b. "Workshare," a document comparison application;

c. "Capax," a provider of archiving, information management, discovery, and compliance software solutions for litigation and regulatory matters;

d. "RSA," a digital risk management and cybersecurity firm; and

e. "EidosMedia," the industry leading enterprise content management system for multimedia publishing, which has been adopted in large-scale news organizations, financial institutions, and government agencies.

13. The know-how and development of STG's software and programs, and its relationships with its business partners and client base, are the result of careful, hard work by its employees at tremendous monetary cost and expenditure of countless hours over many years.

14. STG's intellectual property, confidential information, documents, and trade secrets are of the utmost importance to STG and, accordingly, STG takes reasonable measures to protect those assets. STG employs password-protected computer systems with layers of access to sensitive information, and confidentiality obligations imposed on its customers.


15.   STG maintains a password-protected computer system through which its employees conduct its business. Much of the data contained on STG's computer system is confidential and cannot be obtained from other sources.

**B.   STG Hires Li and Entrusts him with Access to STG's Confidential Business Information and Relationships with its Clients and Business Partners**

16.   Li commenced employment with STG in February 2012 in the position of Professional Services Consultant. STG invested a considerable amount of time and effort into his professional growth. When Li began working for STG, he was legally authorized to work in the United States through a student visa working permit. In March 2013, STG sponsored Li's application for an H1-B visa to allow him to continue his employment with STG in the United States. Li worked in the STG's New Jersey office from the commencement of his employment in February 2012 until around May 2016, at which point he was assigned to STG's Shanghai office.

17.   In addition, throughout his employment, STG provided and paid for Li to be trained on various information governance solutions systems, including multiple paid trainings for iManage, and other product training and certifications.

18.   One of STG's key business partners is iManage, LLC, a company that provides the iManage legal document management services for corporate legal departments and law firms described above. STG provides professional services to implement the iManage document management system such as system upgrades, data migration, new implementations, and annual support services.

19.   As a business partner of iManage, STG was eligible to enroll its employees, including Li, in iManage training courses administered by the iManage Education Department. Upon successful completion of the iManage training course, a business partner's employee

becomes certified by iManage to service its products.  STG paid for Li to take an iManage training course and become certified by iManage.  Due in part to the prevalence of the iManage legal document management services in the legal industry, an individual possessing an iManage certification is at a competitive advantage in the document management field as compared to those who do not possess such a certificate.

20.     In July 2017, less than a year before Li's abrupt resignation from STG, STG paid approximately $2,400 to enroll Li in an iManage training course, which Li completed.  STG also paid for Li to attend courses through which he became certified to service iManage's Interwoven/iManage Universal Search in October 2012.

21.     In addition, throughout his employment, Li participated in the successful completion of many client implementation activities of various enterprise software solutions, with a focus on iManage.  These implementation project activities included face-to-face client meetings to analyze and define their requirements; configuration of client software; enhancement development; conference room pilots; testing; and go-live support for clients.  STG trained Li on pre-sales activities including preparing proposals   Through these activities, Li was provided access to STG's  most confidential information like pricing sheets, product margin of software providers such as iManage, and documents setting forth STG's long-term, phase-by-phase plans for its customers' investments in particular enterprise software solutions.

22.     Over time, Li assumed increasing levels of responsibility within STG.  By virtue of the various positions he held within the company, including those he held while working out of New Jersey, Li acquired, and still possesses, intimate and detailed knowledge about STG's business, including but not limited to current and proposed products and services, business plans, software and other technology, client lists and information, and marketing and sales strategies.

All of this information constitutes trade secrets and/or confidential and proprietary business information belonging to STG, and thus, is properly protectable.

23.     Additionally, as an employee of STG, Li was provided access to STG's password-protected computer system. The access provided to Li was for the purpose of carrying out his job duties. Li was not authorized to utilize STG's computer system for any purpose other than the performance of his job duties.

**C.     Li Establishes a Competing Business and Abruptly Resigns from STG**

24.     On Sunday, February 25, 2018, Li abruptly announced his resignation resigned from STG to take effect later that week, on Thursday, March 1, 2018.  Weeks earlier, and wholly unbeknownst to STG, Li had formed a competing entity in the PRC in January 2018, and he also formed HumbleTech in New York on February 1, 2018.

25.     According to HumbleTech's website (www.humble-tech.com), HumbleTech -- just like STG -- is "an information consulting firm specialized in enterprise solutions."  Like STG, HumbleTech claims to "share our industrial experience and provide professional services to our clients, help them to evolve their business with the boosting power of technology.

26.     Moreover, HumbleTech's website claims that it "has accumulated wealth of knowledge in applied technologies of Professional Document Management, Records Management, Data Protection, Data Compliance, eDidsocvery [sic], WorkFlow Automation, and Big Data Analysis."  HumbleTech further claims that its team is "master of wide-covered solutions from iManage, WorkShare, OpenText, HPE/MicroFocus, Riverbed, NeuCloud, Oracle and many others."  However, HumbleTech acquired the "wealth of knowledge" and "mastery" in the technologies it describes solely through the experience that Li gained through his years of employment with STG.

**D.     Li and HumbleTech Unfairly Compete with STG**

27.     STG has since learned that, while still employed by STG, Li was laying the ground work to pursue two former STG customers - Dahui Lawyers ("Dahui") and Junhe LLP ("Junhe"), two PRC-based law firms.

28.     Upon information and belief, Li convinced a former STG employee named Teng Haohao to do a substandard job on a project for Dahui shortly before Li resigned. Shortly thereafter, Li resigned and immediately began performing information governance services for Dahui through HumbleTech.

29.     Moreover, while still employed by STG, upon information and belief, Li began to arrange for Junhe to receive iManage support from directly from Li rather than through STG's support channels. Thus, when Li resigned from STG, he was able to immediately begin supporting Junhe through HumbleTech, and he continues to perform information governance support services for Junhe through HumbleTech.

**E.     Li and HumbleTech Misappropriate Source Code Belonging to STG**

30.     Making matters worse, upon information and belief, Defendants have misappropriated STG's source code for the Matteroom software and are actively using it to benefit HumbleTech's customers. Notably, even after Dahui ceased being a customer of STG and its license to use the Matteroom KM (BPM) platform was no longer valid, HumbleTech was able to continue to support Dahui's use of the Matteroom KM (BPM) platform. HumbleTech could only have been able to do so in two ways: Li either stole STG's source code for the Matteroom KM (BPM) software before he left STG, or he was able to reverse engineer it based on the intimate and detailed knowledge of the Matteroom KM (BPM) software he gained by virtue of his employment with STG.

31. This code was written by STG's team of software developers. In fact, during his employment with STG, Li himself worked on updating small portions of the code.

32. During his employment with STG, and as part of his job duties for STG, Li had a Domain Administrator level Account Password to access an on-premise Bitbucket, where STG stored its code. This would have enabled Li to make an unauthorized copy of the source code for Matteroom KM (BPM). Bitbucket is state of the art research & development source control software and is password protected. Only STG employees with a need to access Bitbucket are provided with a Bitbucket password.

33. STG derives substantial value from maintaining the confidentiality of its source code because competitors are not able to easily replicate it. Also, as the project manager and consultant on Dahui project while employed by STG, Lin had access to the code and the opportunity to make copies of it.

34. Since procuring STG's proprietary source code, Li and his new company, HumbleTech, have been using the source code, along with other confidential information belonging to STG such as STG's pricing strategies, and, upon information and belief, Matteroom's product roadmap and Matteroom software code, in an effort to secure multiple iManage support and maintenance contracts between Humble Tech and STG's customers.

   **F.   Li and HumbleTech Damage STG's Business**

35. Defendants' misconduct has caused STG to sustain substantial damages to date. Among other things, Defendants have secured contracts with Junhe and Dahui - and have begun providing these former STG clients with services that STG previously provided to them, including annual support and maintenance services, an iManage support & maintenance package, and other regular support services for iManage.

36. In addition, Defendants continue to furnish Junhe with new iManage license orders and, through the misconduct described above, are able to continue to support Dahui's use of STG's Matteroom KM (BPM) software, despite the fact that Dahui is no longer a customer of STG.

37. In addition, in May 2019, another former STG client, Jingtian & Gongcheng ("Jingtian", another PRC based law firm), signed a contract for iManage support and maintenance with an entity called ITForce. ITForce has subcontracted the delivery portion of this contract to Defendants.

38. In addition, since his resignation from STG, Li has been misleading STG's potential business partners and clients, and STG's former and current employees, into believing that HumbleTech is a successor to STG.

39. Based on Defendants' improper diversion of the Junhe, Dahui, and Jingtian contracts alone, Defendants have caused STG to sustain lost revenues in the amount of at least $300,000. Upon information and belief, Defendants have diverted, and are continuing to divert, additional STG clients, which have caused and will continue to cause STG to suffer additional lost revenues.

## COUNT ONE

## UNFAIR COMPETITION

40. STG repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth at length herein.

41. By virtue of his status and employment positions at STG, Li was entrusted with access to STG's resources, business opportunities, trade secrets and other confidential and proprietary information of STG.

42. As described more fully above, Li, together with HumbleTech in the United States, and an affiliated entity owned by Li and based in the PRC, began to compete directly with STG while Li was still employed in a high-level consultant position with STG. He also misappropriated STG's time, resources, business opportunities, trade secrets, and confidential and proprietary information about STG's business for the benefit of HumbleTech, and he actively steered at least two of STG's customers to HumbleTech, while still employed by STG.

43. Even after resigning from STG, Li continues to use STG's confidential and proprietary business information, including the source code for the Matteroom product, to further the interests of HumbleTech. Through these and other actions, described more fully above, Defendants have engaged in, and are continuing to engage in, unfair competition with STG.

44. As a result of the foregoing, STG has been injured, for which it is entitled to equitable relief in the form of a permanent injunction against Defendants; such compensatory damages as may be proven at trial; punitive damages in such amount as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

## COUNT TWO

## BREACH OF THE COMMON LAW DUTY OF LOYALTY

45. STG repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth at length herein.

46. By virtue of his status and employment position with STG, and his access to the trade secrets and other confidential and proprietary information of STG with which STG entrusted him in the course of his employment, Li owed, and continue to owe, a duty of loyalty to STG.

47. By forming the entity HumbleTech to compete directly with STG while still employed in high-level positions with STG; by misappropriating and misusing STG's time, resources, business opportunities, trade secrets, and other confidential and proprietary information about STG's business for the benefit of HumbleTech, Li violated his duty of loyalty to STG.

48. As a result of the foregoing, STG has been injured, for which it is entitled to equitable relief in the form of a permanent injunction against Defendants; such compensatory damages as may be proven at trial; punitive damages in such amount as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

## COUNT THREE

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

49. STG repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth at length herein.

50. STG had and has a reasonable expectancy of a continuing business relationship with its clients -- including but not limited to Junhe, Dahui, and Jingtian.  STG also had and has a reasonable expectancy of a continued business relationship with its business partners, including but not limited to iManage.  Furthermore, STG had and has a reasonable expectancy of a continued business relationship with its other customers, business partners, employees, and consultants.

51. But for the foregoing conduct of Defendants, STG would have continued to receive the benefits of a continued business relationship with its clients, customers, business partners, employees, and consultants.

52. Defendants' tortious and disloyal conduct has interfered with, STG's expectancy of a continued business relationship with iManage, Junhe, Dahui, and Jingtian referenced above, and certain other of its clients, customers, business partners, employees, and consultants.

53. The foregoing conduct of Defendants constitutes, and will continue to constitute, tortious interference with STG's present and/or prospective contractual relations and economic advantage.

54. As a result of the foregoing, STG has been injured, for which it is entitled to equitable relief in the form of a permanent injunction against Defendants; such compensatory damages as may be proven at trial; punitive damages in such amount as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

## COUNT FOUR

## VIOLATION OF THE VIRGINIA UNIFORM TRADE SECRETS ACT

55. STG incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

56. STG, whose sole members are citizens of the Commonwealth of Virginia, owns and possesses certain confidential, proprietary, and trade secret information, including STG's source code for the Matteroom software.

57. As described more fully above, Defendants acquired and/or disclosed STG's confidential, proprietary, and trade secrets, including STG's source code for the Matteroom software, through improper means, and thereby misappropriated these trade secrets within the meaning of the Virginia Uniform Trade Secrets Act Virginia Stat. § 59.1-336.

58. The information belonging to STG that Defendants improperly acquired and/or disclosed, including the source code for the Matteroom software, were trade secrets within the meaning of Virginia Stat. § 59.1-336. Specifically, the information is held by STG in

confidence that (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

59. Moreover, as described more fully above, the information misappropriated by Defendants derives actual and/or potential independent economic value from not being generally known to other persons.

60. Moreover, as descried more fully above, STG takes reasonable efforts to maintain the secrecy of the information misappropriated by Defendants.

61. Defendants knew or had reason to know that by misappropriating STG's confidential, proprietary, and trade secret information, they were acquiring such information through improper means. Moreover, Defendants knew or had reason to know that they were misappropriating STG's confidential, proprietary, and trade secret information belonging to citizens of the Commonwealth of Virginia.

62. As a result of Defendants' violations of the Virginia Uniform Trade Secrets Act, STG has been injured, for which it is entitled to equitable relief in the form of a permanent injunction against Li; such compensatory damages as may be proven at trial; the return of all monies defendants unjustly received by such misappropriation, and punitive damages in such amount as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

## COUNT FIVE

### COMMON LAW MISAPPROPRIATION OF CONFIDENTIAL INFORMATION AND TRADE SECRETS

63. STG repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth at length herein.

64. In addition to STG's claims under the Virginia Uniform Trade Secrets Act, or in the alternative thereto, Defendants have wrongfully misappropriated, retained, used, and/or disclosed STG's confidential and proprietary information and trade secrets, including but not limited to Defendants' theft and/or reverse engineering of Matteroom source code, in violation of their common law duties to STG.

65. As a result of the foregoing, STG has been injured, for which it is entitled to equitable relief in the form of a permanent injunction against Defendants; such compensatory damages as may be proven at trial; punitive damages in such amount as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

## COUNT SIX

### MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. § 1836, *ET SEQ.*

66. STG repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth at length herein.

67. STG owns and possesses certain confidential, proprietary, and trade secret information, as alleged above, including, but not limited to, STG's source code for the Matteroom software..

68. STG's confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and/or ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

69. As described more fully above ,STG has taken reasonable measures to keep such information secret and confidential.

70. Moreover, as described more fully above, as a result of these security measures, STG's confidential and proprietary trade secret information is not available for others to use through any legitimate means.

71. Further, as described more fully above, STG's confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

72. In violation of STG's rights, Defendants' misappropriated STG's confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein. Defendants' misappropriation of STG's confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

73. As a result of the foregoing, STG has suffered, and will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.

74. In addition to damages, STG also seeks permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and to protect other legitimate business interests. STG will continue suffering irreparable harm absent injunctive relief.

## COUNT SEVEN

## UNJUST ENRICHMENT

75. STG repeats and realleges each and every allegation contained in the preceding paragraphs above as if fully set forth at length herein.

76. As a result of the aforesaid wrongful actions of Defendants, Defendants have been unjustly enriched and will continue to be unjustly enriched at the expense of STG, the precise amount of which is not presently ascertainable but which will be proven at trial.

77. By reason of the foregoing, STG is entitled to an accounting from Defendants and the return of all monies defendants unjustly received as a result of the aforesaid wrongful conduct.

## COUNT EIGHT

### ACTION FOR FORFEITURE OF SALARY AND BENEFITS

78. STG incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

79. By the foregoing wrongful and disloyal conduct in complete derogation of his common law duties to STG, Li has forfeited any entitlement to the salary, benefits, expense reimbursements, and other monies paid to him by STG subsequent to their wrongful and disloyal conduct.

80. The retention by Li of the aforesaid salary, benefits, expense reimbursements, and other monies paid to him by STG subsequent to his wrongful and disloyal conduct constitutes an unjust enrichment in favor of Li.

81. By reason of the foregoing, Li is liable to STG for the amount of any salary, benefits, expense reimbursements, and other monies paid to him by STG subsequent to his wrongful and disloyal conduct.

**WHEREFORE**, STG respectfully requests that judgment be made and entered in its favor, as follows:

    a. Compensatory damages and losses to be proved at trial;

    b. Permanent injunctive relief, prohibiting Defendants, and all those acting in concert or participation with them, from further misappropriation of STG's time, resources,

business opportunities, trade secrets and confidential and proprietary information about STG for the benefit of Defendants;

   c. An accounting from Defendants and awarding STG repayment of all monies unjustly diverted from it in an amount which the accounting shall show;

   d. Forfeiture and return of all salary and benefits received by Li following his breach of his common law and statutory duties to STG;

   e. Punitive damages for defendants' intentional and tortious conduct; and

   f. Costs of suit, including attorneys' fees and the costs of investigation and litigation;

   g. Any other relief deemed proper, together with costs and expenses.

Dated: Newark, NJ
   May 24, 2019   Respectfully submitted,

      **K&L GATES LLP**

      599 Lexington Avenue
      New York, New York 10022

      and

      One Newark Center, Tenth Floor
      Newark, New Jersey 07102

      By: /s/ George P. Barbatsuly _____
        George P. Barbatsuly

      Attorneys for Plaintiff
      Smart Team Global, LLC